UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cv-30093-MGM |
| ) | |
| JOSE BOU and SALSARENGUE, INC. ) | |
| d/b/a/ Salsarengue Restaurant. ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT AND ASSESSMENT OF DAMAGES
(Dkt. No. 10)

I. INTRODUCTION

This case is based on a claim of cable television signal piracy. Before the court is a motion by plaintiff, J & J Sports Productions, Inc. ("Plaintiff"), for entry of default judgment and an assessment of damages. The motion was referred to the undersigned by District Judge Mark G. Mastroianni for a report and recommendation (Dkt. No. 17). *See* 28 U.S.C. § 636(b)(1)(B). The Court held a hearing on the motion on December 3, 2015 (Dkt. No. 19). Plaintiff having demonstrated that the defendants, Jose Bou and Salsarengue, Inc. ("Defendants"), failed to appear or otherwise defend this suit, Plaintiff is entitled to a default judgment under Federal Rule of Civil Procedure 55(b)(2). For the reasons set forth below, the undersigned recommends that a default judgment enter against Defendants in the amount of $11,181.90.

II. FACTUAL AND PROCEDURAL BACKGROUND

In view of Defendants' failure to appear, the facts alleged in the complaint are taken to be true. *See Ortiz-Gonzalez v. Fonovisa,* 277 F.3d 59, 62-63 (1st Cir. 2002). The following facts are drawn from the complaint, supplemented by information from affidavits filed on behalf of

1

Plaintiff by Joseph Gagliardi, Plaintiff's President, Manuel Aranibar, a private investigator present at Defendants' establishment during the evening of May 4, 2013, and Thomas P. Riley, an attorney for Plaintiff (Dkt. Nos. 12, 15, 22).  Plaintiff, a California corporation, held the exclusive nationwide commercial distribution rights to Floyd Mayweather, Jr. vs. Robert Guerrero, WBA Welterweight Championship Fight Program ("the Fight"), which was telecast nationally on May 4, 2013 (Dkt. No. 1 at 3).  As a commercial distributor and licensor of sporting events, Plaintiff invested substantial funds in marketing and advertising and transmitting the Fight to its customers.  Plaintiff entered into sublicensing rights with various commercial establishments such as hotels, casinos, bars, taverns, and racetracks to publicly exhibit the Fight and accompanying commentary (*id.*).  Defendants unlawfully intercepted and showed the Fight at their bar and restaurant, located at 392 High Street, Holyoke, at around 10:00 p.m. on May 4, 2013 (Dkt. No. 15 at 2).  Mr. Aranibar observed that the Fight was being shown on one 55-inch television located adjacent to the restaurant area and was being watched by all of the patrons in the establishment.  Mr. Aranibar performed three headcounts while the Fight was being shown in the establishment, noting the presence, respectively, of 34, 30, and 36 patrons (*id.* at 3).  The licensing fee that Defendants should have paid to show the Fight was $2,200 (Dkt. No. 12 at 3).

Mr. Gagliardi's affidavit sets out a nonexclusive list of means by which Defendants could have intercepted and broadcast the fight, as follows:

- Use of a "blackbox" "hotbox," or "pancake box," which, when installed on a cable TV line allows for the descrambled reception of a pay-per-view broadcast;

- Use of a "smartcard," "test card," or "programming card," which, when installed on a DSS satellite receiver line allows for the descrambled reception of a pay-per-view broadcast;

- The purposeful representation of a commercial establishment as a residential property to allow the fraudulent purchase of pay-per-view programming at a residential rate;

2

- Use of an illegal cable drop or splice from an apartment or home adjacent to the commercial establishment, which would permit purchase of the broadcast at a residential rate and diversion of the program to the commercial establishment; or

- Purchase of illegal unencryption devices or illegal satellite authorization codes.

(Dkt. No. 12 at 3-4). Neither the complaint nor any of the affidavits purports to state the means by which Defendants in the instant case intercepted the Fight.

The defendants are repeat offenders: on or around December 7, 2015, a default judgment in the amount of $5,931.90 entered against them for a virtually identical violation. *See J & J Sports Prods., Inc. v. Bou*, Civil Action No. 15-30004-MGM, 2015 WL 8082433, *8 (D. Mass. Dec. 7, 2015). Plaintiff has submitted evidence showing that on or around February 18, 2013, *before* the illegal broadcast of the Fight at issue in the instant case, Plaintiff notified Defendants that their conduct was illegal and that they were potentially liable for damages for cable piracy (Dkt. Nos. 22-1; 22-3).

The complaint in this case was filed on May 27, 2015 (Dkt. No. 1). The docket shows that service was effected on each defendant on May 29, 2015 (Dkt. Nos. 5, 6). Defendants failed to appear or otherwise defend. On September 8, 2015, the Clerk entered defaults against defendants Jose Bou and Salsarengue, Inc. (Dkt. No. 9).

III. DISCUSSION

Plaintiff asserted four counts in its complaint: (1) violation of 47 U.S.C. § 605 ("§ 605") (Count I); violation of 47 U.S.C. § 553 ("§ 553") (Count II); conversion (Count III); and violation of Massachusetts General Laws ch. 93A (Count IV) (Dkt. No. 1). The court does not write on a blank slate. There are numerous instructive cases across the country and in this district assessing damages on default in cases of involving allegations of cable theft similar to those asserted in this case. *See, e.g., Joe Hand Promotions, Inc. v. Sorel*, 843 F. Supp. 2d 130

(D. Mass. 2012); *Joe Hand Promotions, Inc. v. Lenihan*, Civil Action No. 11-10504-TSH, 2012 WL 3637833 (D. Mass. Aug. 21, 2012); *Joe Hand Promotions, Inc. v. Patton*, Civil Action No. 10-40242-FDS, 2011 WL 6002475 (D. Mass. Nov. 29, 2011); *Joe Hand Promotions, Inc. v. Rajan*, No. 10-40029-TSH, 2011 WL 3295424 (D. Mass. July 28, 2011).

"Although, as described, the complaint lists four counts, Plaintiff's memorandum appears to seek damages from Defendants only for their [claimed] violation of 47 U.S.C. § 605(a), the basis of Count I." *Sorel*, 843 F. Supp. 2d at 133-34. As previously noted, Plaintiff has informed the court, by means of Mr. Gagliardi's affidavit, that there are a variety of means by which Defendants might have intercepted the Fight, one being the theft of cable communications (Dkt. No. 14 at 3-4). While the complaint alleges a violation of 47 U.S.C. § 605(a), in this case, as in *Sorel*, *Lenihan*, *Patton,* and *Rajan*, the method by which the program at issue (the Fight) was intercepted is not clearly established by the record. This – arguably – matters because the United States Court of Appeals for the First Circuit has held that "§ 605 does not apply to the theft of cable communications." *Patton*, 2011 WL 6002475, at *2 (citing *Charter Commc'ns Entm't I v. Burdulis*, 460 F.3d 168, 172 (1st Cir. 2006)). Section 605 provides for a more generous measure of damages than does § 553, and provides for a mandatory rather than a discretionary award of attorney's fees and costs. *See* 47 U.S.C. § 605(3(3)(C)(ii) and (iii); 47 U.S.C. § 553(c)(2)(C), 553(c)(3)(A), (B).

In *Lenihan*, the court held that the allegation in the complaint was a sufficient basis for finding a violation of § 605, although the court held that "[u]ltimately it matter[ed] not [whether the interception occurred by satellite or cable] because [the court] award[ed] damages that (1) f[e]ll below the maximum allowed by 553, but [we]re above the minimum required by § 605; and (2) include[d] an award of attorney's fees that [we]re discretionary under § 533 and mandatory

under § 605." *Lenihan*, 2012 WL 3637833, at *2. Judge Ponsor, adopting a Report and Recommendation issued by Magistrate Judge Kenneth Neiman, took a similar approach in *Sorel*. *See Sorel*, 843 F. Supp. 2d at 134 ("In the end, however, the particular provision does not matter since the amount of damages the court will recommend falls well below the statutory maximum allowed even by Section 553(a)(1)."). In *Patton* and *Rajan*, the courts held, based on allegations and a record similar to the record now before this court, that § 605 did not apply, and awarded damages under § 553. *See Patton*, 2011 WL 6002475, at *2 (because defendants were intercepting cable communications, § 605 did not apply); *Rajan*, 2011 WL 3295424, at *2 (because complaint failed to specify type of interception, court applied § 553).

The undersigned recommends that the court adopt the approach taken in *Lenihan* and *Sorel* and award damages in compliance with the provisions of §§ 605 and 533 without deciding which provision applies to Defendants' interception of the Fight. Plaintiff can be compensated appropriately for the injuries it has suffered within the damages limits set out in § 553, and any such award can be crafted to also satisfy the provisions of § 605. *See, e.g., Sorel*, 843 F. Supp. 2d at 134.

Plaintiff acknowledges that the First Circuit has held that "statutory damages should be calculated as an estimate of actual damages, without additional deterrence consideration." *Lenihan*, 2012 WL 3637833, at *2 (citing *Burdulis*, 460 F.3d at 818). Mr. Gagliardi's affidavit establishes that Defendants should have paid $2,200 to broadcast the Fight on May 4, 2013 (Dkt. No. 12 at 3). While recognizing that actual damages may exceed the licensing fee Defendants should have paid, Plaintiff has not shown any actual damages beyond that amount. Thus, the court recommends an award of $2,200 in actual damages. Under § 605, an award of attorney's fees and costs is mandatory; under § 533, such an award is discretionary. Where, as here, the

facts clearly establish a willful and repeat statutory violation, an award of fees and costs, while discretionary under § 553, is wholly appropriate. Plaintiff's request for attorney's fees in the amount of $1,000 and costs of $481.90 (filing fee and service), substantiated by affidavit (Dkt. No. 13), is reasonable and, in the undersigned's view, should be awarded.

As to enhanced damages, Mr. Gagliardi's affidavit establishes that Defendants' conduct was willful, as he attests persuasively that Defendants could not have accidently intercepted and shown the Fight (*id*. at 3-4). In addition, Defendants were on notice before the broadcast of the Fight, by means of a letter from attorney Thomas P. Riley, that cable piracy was a federal statutory violation (Dkt. No. 22). Finally, the complaint establishes that the Fight was shown for purposes of obtaining a commercial advantage or for private gain. *See, e.g., Rajan*, 2011 WL 3295424, at *4 (in deciding whether the award enhanced damages, court considered whether violation of § 533 was willful, and whether it was committed for purposes of commercial advantage). In *Sorel*, Magistrate Judge Neiman recommended, and Judge Ponsor awarded, $2,500 in enhanced damages for willful interception. *See Sorel*, 843 F. Supp. 2d at 135. In *Lenihan*, Judge Hillman awarded the plaintiff $1,000 in enhanced damages; in *Rajan*, he awarded $2,000 in enhanced damages. *See Lenihan*, 2012 WL 3637833, at *4; *Rajan*, 2011 WL 3295424, at *7. Judge Saylor awarded enhanced damages of $750 in the *Patton* case. *See Patton*, 2011 WL 6002475, at *6. In none of these cases were the defaulters repeat offenders. Nonetheless taking this range into account, *see Sorel*, 843 F. Supp. 2d at 135 (awarding damages comparable to awards in similar geographic area), and considering as well the number of patrons in the establishment when the Fight was shown, the general nature of the establishment (characterized by Plaintiff's investigator as "poor"), and the fact that Defendants are repeat offenders, thereby increasing the need for deterrence, the undersigned recommends an award of

enhanced damages of $7,500.[1]  While this amount may appear relatively modest for a willful repeat offender, Salsarengue is a small establishment, capable of accommodating a limited number of patrons.  If this recommendation is accepted by the presiding judge, Defendants will be facing combined default judgments exceeding $17,000.  This amount, with the implicit threat of increasing penalties for any future violations, should, in the view of the undersigned, be sufficient to deter further illegal conduct on the part of these Defendants.  *See J & J Sports Prods, Inc.*, 2015 WL 8082433, *2 (enhanced damages should be sufficient to serve as deterrent against future violations).

As is apparently a common practice, although Plaintiff's complaint includes state law claims of conversion and violation of Massachusetts General Laws ch. 93A ("Chapter 93A"), its memorandum in support of its motion for an assessment of damages does not seek recovery on the basis of these claims (Dkt. No. 11).  *See Sorel*, 843 F. Supp. 2d at 133-134 (although complaint contained four counts, plaintiff only sought damages on basis of one count).  Other judges in this district have declined to award damages on state law claims beyond the damages awarded under §§ 553 and 605 because "[t]he injury sustained under the federal statutes and for the state law . . . claim is the same," and an additional award would be duplicative.  *Lenihan*, 2012 WL 3637833, at *4; *see also Patton*, 2011 WL 6002475, at *5 (complaint stated claim under Chapter 93A, but an award of damages would be duplicative).[2]

---

[1] Under § 553, a court may award enhanced damages of no more than $50,000 for a willful violation of the statute.  *See* 42 U.S.C. § 553(c)(3)(B); *see also Rajan*, 2011 WL 3295424, *3.

[2] Because Plaintiff does not request an award of damages on the basis of its claims under Chapter 93A and for conversion, and because such damages would, in any event, be duplicative, it is not necessary to analyze whether the state law claims in this case are preempted by federal law.  *See, e.g., Lenihan*, 2012 WL 3637833, at *4 (conversion claim not preempted); *Patton*, 2011 WL 6002475, at *5 (conversion claim preempted; Chapter 93A claim not preempted); *Rajan*, 2011

IV.     C<span style="font-variant:small-caps">onclusion</span>

For the reasons set forth above, the undersigned recommends that the court award Plaintiff J & J Sports Productions, Inc. the following damages against defendants Jose Bou and Salsarengue, Inc.:

1. Compensatory damages in the amount of $2,200;

2. Damages for a "willful" violation in the amount of $7,500;

3. Costs in the amount of $481.90; and

4. Attorney's fees in the amount of $1,000

for a total of $11,181.90.[3]

DATED: January 20, 2016

                                             /s/ Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             U. S. MAGISTRATE JUDGE

---

WL 3295424, at *6-7 (conversion claim not preempted; complaint failed to state claim under Chapter 93A).

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.